**F I L E D**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

JUN 1 9 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 07 CR 50070-03 |
| vs. | ) | Judge Frederick J. Kapala |
| | ) | |
| CHRISTOPHER R. TAYLOR | ) | |

## PLEA AGREEMENT

1.      This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant CHRISTOPHER R. TAYLOR, and his attorney, JOHN NELSON, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) and Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.      The superseding indictment in this case charges defendant with conspiracy to commit arson, in violation of Title 18, United States Code, Sections 844(i) and (n) and arson, in violation of Title 18, United States Code, Section 844(i).

3.      Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorney.

4.      Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Two of the superseding indictment. Count Two charges defendant with conspiring to commit arson, in violation of Title 18, United States Code, Sections 844(i) and (n).

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count Two of the superseding indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

a.      Beginning in July 2007 and continuing to on or about October 4, 2007, at Oregon, defendant conspired with co-defendants Samer J. Aljabari, Matthew R. McMeekan, and Harold Lamar Rains, and others, to maliciously damage and destroy, by means of fire, the building and personal property located at 210 South Fourth Street, Oregon, Illinois, which property was being used in activities affecting interstate commerce.

b.      Between July 2007 and October 4, 2007, the Oregon Smoke Shop was a business located at 210 South Fourth Street, Oregon, Illinois consisting of a building, fixtures, and equipment. The Oregon Smoke Shop was engaged in activities affecting interstate commerce in that it sold tobacco and tobacco-related products which had previously been transported in interstate commerce to retail customers. Sam's Wholesale Tobacco and Gifts (hereinafter "Sam's Wholesale Tobacco") was a business located at 204 West Washington Street, Oregon, Illinois and sold retail tobacco and tobacco-related

2

products at that location. Co-defendant Aljabari worked at Sam's Wholesale Tobacco as a clerk and also resided at that address in a room in the back of the business. Sam's Wholesale Tobacco was owned by a relative (hereinafter "Relative A") of Aljabari.

     c.     Between 12:00 a.m. and 1:00 a.m on October 4, 2007, McMeekan contacted defendant by telephone and asked if defendant wanted to come out to help with the fire. Defendant agreed and McMeekan picked defendant up from defendant's residence. Defendant and McMeekan drove to Sam's Wholesale Tobacco and met with Aljabari in the garage of the business. Aljabari said he would pay defendant and McMeekan $1,000 each to start the Oregon Smoke on fire. Aljabari said he wanted the Oregon Smoke Shop burned down because it was hurting the business of Sam's Wholesale Tobacco. Aljabari suggested that defendant and McMeekan create a police diversion by breaking the car window of an individual (hereinafter "Individual A") that resided at the same address where Rains was temporarily residing. Defendant and McMeekan agreed with Aljabari's plan and McMeekan drove defendant to Individual A's residence and dropped him off. McMeekan told defendant to meet him at McMeekan's residence, which was located less than a block away, after defendant broke the car window. When defendant approached Individual A's residence, defendant observed Rains outside the residence and began talking to him. Defendant said that he and McMeekan intended to burn down the Orgeon Smoke Shop and that he intended to break Individual A's car window to cause the police to respond to that residence. Rains

3

said that instead of defendant breaking the car window, defendant would call the Oregon Police Department and falsely report a suspicious person in near Individual A's vehicle.

d.    While defendant was talking to Rains, McMeekan drove to his own residence and retrieved a red 2 gallon plastic gas can containing gasoline from his father's garage and placed it in his car. A short while later, defendant arrived at McMeekan's residence.    Defendant told McMeekan about defendant's conversation with Rains. Defendant and McMeekan drove back to Sam's Wholesale Tobacco and met with Aljabari. Defendant and McMeekan told Aljabari that Rains agreed to call the police and create the diversion. At that time, Aljabari gave defendant and McMeekan a blue plastic gas can that was filled with kerosene and blue surgical masks to wear when they went and started the fire.

e.    While defendant was at Sam's Wholesale Tobacco, McMeekan received a text message from Rains saying, "Go". After McMeekan received the message from Rains, defendant and McMeekan drove in McMeekan's car to a parking lot approximately one block from the Oregon Smoke Shop and parked the vehicle. Defendant and McMeekan each carried a gas can and ran approximately one block to the Oregon Smoke Shop. Defendant went through the window while McMeekan remained outside the window. McMeekan handed defendant the gas cans through the window and defendant poured gas and kerosene throughout the Oregon Smoke Shop. Defendant lit the poured flammable liquid and a fire erupted. Defendant jumped out the window and both defendant and McMeekan ran back to McMeekan's car. Defendant and McMeekan drove back to Sam's Wholesale Tobacco and

4

met again with Aljabari.  Defendant and McMeekan told Aljabari that they started the fire. Aljabari told them that he had been listening to the police scanner.  Aljabari further told defendant and McMeekan that he heard the alarm call regarding the fire and saw fire trucks heading in the direction of the Oregon Smoke Shop.

        f.      Following the fire, Aljabari kept the red and blue plastic gas cans and also wanted defendant's and McMeekan's clothes and shoes.  Defendant and McMeekan gave Aljabari their shoes, hooded sweat shirts and blue surgical face masks that they wore when they started the fire.  Aljabari gave each of them a different pair of shoes and sweatshirts. After changing their clothes, defendant and McMeekan left Aljabari's residence and McMeekan drove defendant to his house.  Approximately 4 or 5 days after the fire, defendant and McMeekan went to see Aljabari at Sam's Wholesale Tobacco and McMeekan told Aljabari that he wanted his money.  Aljabari told McMeekan that he would pay McMeekan within a week.  Defendant did not receive any payments from Aljabari for starting the fire.

        7.      The foregoing facts are set forth solely to assist the court in determining whether a factual basis exists for defendant's plea of guilty, and are not intended to be a complete or comprehensive statement of all the facts within defendant's personal knowledge regarding the charged crimes and related conduct.

5

## Maximum Statutory Penalties

8.      Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.      A maximum sentence of 20 years' imprisonment, and a statutory mandatory minimum sentence of 5 years. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.      In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

9.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

6

a.  **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

b.  **Offense Level Calculations.**

i.  Pursuant to Guideline § 2K1.4(a)(1)(A) and (B), the base offense level for the offense is level 24, because the offense created a substantial risk of death or serious bodily injury to other individuals and the risk was created knowingly and the offense involved the destruction of a place of public use.

ii.  Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline §3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii.  In accord with Guideline §3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline §3E1.1(b), if the Court determines the

offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 21, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 37 to 46 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 5 years' imprisonment.

      e.    Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline

8

calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.    Both parties expressly acknowledge that this plea agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Cooperation

11.    Defendant agrees he will fully and truthfully cooperate with the United States Attorney for the Northern District of Illinois in any matter in which he is called upon to cooperate. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil or administrative proceeding. Only the United States Attorney for the Northern District of Illinois may require defendant's cooperation pursuant to this Plea Agreement. Defendant agrees to the postponement of his sentencing until after the conclusion of his cooperation.

9

## Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines that defendant has continued to provide full and truthful cooperation as required by this plea agreement, then the government shall move the Court, pursuant to Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range  and statutory minimum sentence and to impose the specific sentence agreed to by the parties as outlined below.   Defendant understands that the decision to depart from the applicable guidelines range and statutory minimum sentence rests solely with the Court.

13.     If the government moves the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth in the preceding paragraph, this Agreement will be governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C).  That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 80 percent of the low end of the applicable guidelines range or the statutory minimum sentence, whichever is greater.  Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate.  If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d) and (e).  If, however, the Court refuses to impose the agreed term

of incarceration set forth herein, thereby rejecting this plea agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this plea agreement.

14.     If the government does not move the Court, pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e), to depart from the applicable Guideline range and the statutory minimum sentence, as set forth above, this plea agreement will not be governed, in any part, by Federal Rule of Criminal Procedure 11(c)(1)(C), the preceding paragraph of this plea agreement will be inoperative, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to §5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Sentencing Guideline §5K1.1 and 18 U.S.C. § 3553(e).

15.     Regarding restitution, the parties acknowledge that  pursuant to Title 18, United States Code, § 3663A, the court must order defendant, together with any jointly liable co-defendants, to make full restitution to Al and Dawn Scott in the amount of $500, State Auto Insurance Companies in the amount of $38,221.35, and to Ramandan Ashour  in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing.

16.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

17.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the superseding indictment as to this defendant.

### Presentence Investigation Report/Post-Sentence Supervision

18.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of defendant's cooperation.

19.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline §3E1.1 and enhancement of his sentence

12

for obstruction of justice under Guideline §3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

20.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

21.    This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 07 CR 50070-03.

22.    This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or

cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Agreement.

## Waiver of Rights

23.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

14

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

15

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

b.    **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.  Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal his conviction and the sentence imposed.  Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Sentencing Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Plea Agreement.  In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255.  The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

24.    By entering this plea of guilty, defendant also waives any and all right the defendant may have, pursuant to 18 U.S.C. §3600, to require DNA testing of any physical evidence in the possession of the Government. Defendant fully understands that, as a result of this waiver, any physical evidence in this case will not be preserved by the Government and will therefore not be available for DNA testing in the future.

## Other Terms

25.    Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

26.    Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

27.    Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the

17

Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

29.   Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: ___June 19, 2008___

PATRICK J. FITZGERALD
United States Attorney

CHRISTOPHER R. TAYLOR
Defendant

JOSEPH C. PEDERSEN
Assistant U.S. Attorney

JOHN NELSON
Attorney for Defendant

18

No._____07 CR 50070-03_____

# UNITED STATES DISTRICT COURT
## for the
# NORTHERN DISTRICT OF ILLINOIS
## Western Division

---

## UNITED STATES OF AMERICA

### V

## CHRISTOPHER R. TAYLOR

---

## PLEA AGREEMENT

---

**Office of**
**UNITED STATES ATTORNEY**
**308 West State Street-Room 300**
**Rockford, Illinois  61101**

**815-987-4444**